OPINION OF THE COURT
 

 Smith, J.
 

 Respondent Khan sought to construct a residence on property that was made subject to environmental zoning regulations soon after he bought it. The primary issue in this case is whether a separate ordinance which provides an exemption from zoning regulations for property held in single and separate ownership gave respondent a right to build in spite of the new environmental zoning regulations. Because we determine that the ordinance providing the exemption here does not apply to the zoning regulation at issue designed to protect property from the effects of floods, we reverse.
 

 
 *347
 
 Respondent, Shahid U. Khan, seeks, pursuant to CPLR article 78, to vacate and annul a decision by appellant, Zoning Board of Appeals of the Village of Irvington (hereinafter ZB A), which denied respondent’s request for issuance of a building permit or, in the alternative, a variance. Respondent is the owner of two parcels (both improved and unimproved) of real property (Tax Map Sheet 10B, Block 229, Lots 83, 84, 85 and portions of 81 and 82) located in the Village of Irvington, Westchester County, New York. The two parcels were purchased on January 27, 1989, under a single contract of sale with two separate deeds. No apportionment of the purchase price was made between the two parcels by the parties or the contract. However, the valuation of the two parcels for transfer tax purposes was $270,000 for the improved parcel and $10,000 for the unimproved parcel. Respondent acquired the unimproved parcel in his name only and acquired the parcel improved with a single-family dwelling jointly with his wife. The improved parcel is not in issue here. Both parcels were held by the previous owners as one lot. Respondent divided the parcels in order to build on the unimproved property and sell it.
 

 Both parcels are located in a single-family zoning district requiring that lots have a minimum area of 5,000 square feet. The unimproved parcel has 5,202 square feet. Under the Village’s zoning ordinance, the transfer of the subject property, as divided, created a legal building lot separate from the adjoining parcel without the requirement of subdivision approval (Village of Irvington Zoning Ordinance § 47-52), as each lot had the required frontage on an existing improved public street.
 

 On January 30, 1989, after the purchase and division of the two parcels, respondent applied for a building permit to construct a house on the unimproved parcel. Respondent was informed that because the subject property was located in a "flood plain area,” before a building permit could be issued, he had to apply for a development permit or variance from the Village Board of Trustees under chapter 19 of the Village Code.
 
 [1]
 

 On February 28, 1989, approximately one month after respondent purchased the subject property, the Board of Trust
 
 *348
 
 ces amended the Village of Irvington Zoning Ordinance with the enactment of the "Resource Protection” regulations. The purpose of these regulations was to protect environmentally sensitive areas such as wetlands, watersheds and flood plains. The Resource Protection regulations limited development and restricted new construction on environmentally sensitive areas within the Village. Included within the regulations are all land located on a flood plain, wetlands, watershed land and steep slopes. Under the Resource Protection regulations, the Village’s Planning Board determines the "net buildable site area” by subtracting the "base site area” from the "resource protection land”.
 

 The Planning Board determined that respondent’s "net buildable site area” under the Resource regulation’s formula was "zero” as the entire parcel was located in a flood plain (record on appeal, at 45). On March 29, 1989, respondent applied to the ZBA (1) for a favorable interpretation of the zoning ordinance applicable to single and separate ownership (Village Zoning Ordinance § 47-5.D)
 
 [2]
 
 or (2) for an area variance. At the May 23, 1989 meeting of the ZBA, respondent appeared with his attorney and his architect. Respondent contended that he had a constitutional right to build a residence on the property, that he would add fill to prevent flooding, and that the property with a house would have a value of $100,000 and without a house, a value of only $10,000. Opposition to the application included assertions of a risk of increased flooding to nearby properties caused by the new construction, destruction of the aesthetic value of the area and an increase in traffic congestion.
 

 On August 15, 1989, after additional argument, the ZBA concluded that section 47-5.D was inapplicable to the facts here because it applied only to upzoning, that is, to the size requirements for building on property. It concluded further that because the subject property was, before and after the enactment of the Resource regulations, located entirely within
 
 *349
 
 a flood plain area, a variance under chapter 19 of the Village’s prior zoning regulations was required. In addition, the ZBA stated that because respondent had failed to demonstrate practical difficulties, no variance was warranted.
 

 Respondent commenced an article 78 proceeding seeking annulment of the ZBA’s determination and an order directing issuance of a building permit or variance. Supreme Court dismissed the petition, concluding that the ZBA properly denied petitioner’s request for a favorable interpretation of section 47-5.D, as that section was enacted to protect owners of property in single and separate ownership from the consequences of "upzoning.” The court found the Resource regulations were not part of the minimum width and area requirements of the zoning ordinance. The court further found the ZBA’s denial of respondent’s request for a variance a reasonable exercise of its discretion and supported by the record. The Supreme Court rejected respondent’s argument of an unconstitutional taking, finding respondent failed to offer proof of the property’s market value when it was acquired as compared to the value after enactment of the ordinance.
 

 The Appellate Division reversed, annulled the determination of the ZBA and directed the ZBA to grant respondent’s application and issue a variance. The Appellate Division held that since respondent owned the subject property in single and separate ownership prior to enactment of the ordinance rendering it nonconforming, respondent had a vested right to use the property for residential purposes.
 

 Appellant ZBA argues that respondent is not entitled to an exemption under section 47-5.D of the Zoning Ordinance and that the Appellate Division erred in concluding that respondent has a vested right to use the subject parcel for residential purposes.
 

 Some of the courts of this State have recognized a common-law right to an exemption from minimum area ordinances where the property was held in single and separate ownership before an ordinance’s adoption and was rendered substandard as a result of the ordinance (see,
 
 Matter of Bateman v Zoning Bd. of Appeals,
 
 191 AD2d 568,
 
 appeal dismissed
 
 82 NY2d 735;
 
 Matter of Morin v Zoning Bd. of Appeals,
 
 163 AD2d 389;
 
 Matter of M.E.F. Bldrs. v Siegel,
 
 162 AD2d 533;
 
 Cange v Scheyer,
 
 146 AD2d 594;
 
 Modular Homes Corp. v Combs,
 
 115 AD2d 527;
 
 Matter of Mackay v Mayhall,
 
 92 Misc 2d 868;
 
 see also, Matter of Ewers v Zoning Bd. of Appeals,
 
 165 AD2d 873;
 
 Matter of Scavone v Volz,
 
 34 AD2d 966). Based on constitutional concerns
 
 *350
 
 about confiscatory takings and using concepts borrowed from the nonconforming use doctrine
 
 (see, Matter of Dittmer v Epstein,
 
 34 AD2d 675;
 
 Matter of Bexson v Board of Zoning & Appeals,
 
 28 AD2d 848,
 
 affd
 
 21 NY2d 961;
 
 Matter of Mandalay Constr. v Eccleston,
 
 9 AD2d 918;
 
 see also, Matter of Long Is. Land Research Bur. v Young,
 
 7 Misc 2d 469), the "single and separate ownership” doctrine that has been applied in the lower courts holds that when certain criteria are satisfied, the owner of what was once a buildable lot is entitled to use it for residential purposes notwithstanding a contrary area restriction and that, accordingly, the owner must be issued a variance as a matter of right and without regard to economic injury, self-imposed hardship or the possibility of a sale
 
 (see, Matter of Pateman v Zoning Bd. of Appeals, supra; Matter of M.E.F. Bldrs. v Siegel, supra; Modular Homes Corp. v Combs, supra).
 
 Significantly, the doctrine has never been explicitly recognized by this Court.
 

 Having examined the case law, we now conclude that there is no need for a common-law rule to protect landowners who possess parcels in "single and separate ownership” situations, and, accordingly, we decline to adopt such a rule. A municipality may in the reasonable exercise of its police powers change its zoning to control land use and development. A municipality that chooses to make such changes may, but need not, exempt existing owners of substandard lots from the changes’ more onerous effects. As one of several ways to accomplish this, a municipality may provide through its ordinance for exemptions for property that is held in single and separate ownership. In the usual case, such exemptions are self-executing and no application to the local Zoning Board of Appeals is necessary. In contrast, where the municipality has not created an exemption as a matter of legislative grace, the property owner can ordinarily utilize the local provisions for obtaining a variance. Failing that, an owner who perceives himself or herself aggrieved can bring a judicial proceeding alleging an unconstitutional taking or some governmental arbitrariness in the denial of a variance. Since the owner’s constitutional rights are amply protected by the availability of such proceedings, there is no legal basis for overriding the municipality’s legislative choice by creating a separate common-law right that would automatically exempt property owners from area restrictions without an individualized assessment of hardship.
 

 In this case, the single and separate ownership exemption found in Irvington Village Zoning Ordinance § 47-5.D is
 
 *351
 
 inapplicable. The ordinance limits an exemption by its terms and provides that nonconforming or substandard property may be exempt from minimum lot or area regulations where its ownership was different from that of any adjoining land on the effective date of the ordinance and is still so owned at the time of the request for a building permit. As such, it is similar to ordinances generally used for property held in "single and separate ownership” or "grandfather-clause” type provisions for zoning regulations involving substandard lots
 
 (see,
 
 1 Anderson, New York Zoning Law and Practice § 9.43, at 472-479 [3d ed]). The ordinance relates to area and width and has no application here where Resource Protection regulations were designed to protect property against floods.
 

 Thus, in order to prevail, respondent would have to show entitlement to a variance almost as a matter of law since a Zoning Board’s determination must be upheld if it is rational and supported by substantial evidence
 
 (Matter of Fuhst v Foley,
 
 45 NY2d 441, 444;
 
 Conley v Town of Brookhaven Zoning Bd. of Appeals,
 
 40 NY2d 309, 314).
 

 Respondent’s burden turns on whether a use or area variance is at issue. Generally, a use variance will allow use of land as a matter of discretion in circumstances when the desired exceptional use has been proscribed by the zoning regulations
 
 (Consolidated Edison Co. v Hoffman,
 
 43 NY2d 598, 606-607). The applicant must make a showing of unnecessary hardship
 
 (see, Matter of Sasso v Osgood,
 
 86 NY2d 374;
 
 Matter of Otto v Steinhilber,
 
 282 NY 71).
 
 [3]
 

 Here, respondent is seeking an area variance. "Generally speaking, an area variance involves no change in the essential character of the zoned district”
 
 (Matter of Wilcox v Zoning Bd. of Appeals,
 
 17 NY2d 249, 254;
 
 see also, Matter of Overhill Bldg. Co. v Delany,
 
 28 NY2d 449), nor does it seek to change the essential use of the land
 
 (Matter of National Merritt v Weist,
 
 41 NY2d 438, 441). Thus, an area variance involves "matters such as setback lines, frontage requirements, lot-size restrictions, density regulations, and yard requirements” (2 Anderson,
 
 op. cit.,
 
 § 23.06).
 

 In
 
 Matter of Sasso v Osgood (supra)
 
 this Court interpreted the parallel provisions of Town Law § 267-b (3) and held that the Zoning Board, before granting an area variance, must engage in a balancing test, considering the factors outlined in
 
 *352
 
 the statute and weighing the benefit to the applicant against the detriment to the health, safety and welfare of the neighborhood or community. The applicant need no longer establish practical difficulties in the use of his land. That interpretation and analysis applies to section 7-712-b (3) (b), the Village Law provision relevant here.
 

 Applying that test in this case, we conclude that the Zoning Board acted appropriately and within its powers in denying the variance.
 

 Finally, respondent’s argument that denial of a variance and permit amount to a confiscatory taking is rejected. Respondent failed to offer proof of the value of the property before and after the regulation went into effect
 
 (Matter of Kransteuber v Scheyer,
 
 176 AD2d 724,
 
 affd
 
 80 NY2d 783).
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
 

 Order reversed, etc.
 

 [1]
 

 . Chapter 19 was adopted on October 16, 1978 to comply with Federal regulations concerning comprehensive programs for low-cost flood insurance to homeowners to regulate development in flood plains. "Flood plain areas” are based on a Flood Insurance Rate Map and a Federal study prepared by the Federal Emergency Management Agency.
 

 [2]
 

 . Section 47-5.D (renum § 243-7.D [1990]) ("single and separate ownership” provision) provides:
 

 "D. The minimum lot width or area regulations shall not apply to any lot with an area and/or width of less than that prescribed herein provided that:
 

 "1. Such lot was under different ownership from that of any adjoining land on the effective date of this ordinance and is still so owned at the time of application for a building permit; and
 

 "2. Such lot shall be subject to all other applicable regulations prescribed by this ordinance.”
 

 [3]
 

 . The requirements for a showing of hardship are now set forth in Town Law § 267-b and Village Law § 7-712-b.